McFarland, J.,
delivered the opinion of the court.
Nathaniel A. McNairy died in the year 1851, having disposed of his large estate by his will, which was duly proven, and C. B. McNairy, the widow, qualified as executrix.
The first item-of the will gave to the widow, as her absolute property, the family residence in Nashville, the testator’s carriage and horses and harness, household and kitchen furniture, and as many of the testator’s slaves as she might desire, and in addition to this, charged his entire estate, after the payment of debts, with the support of said widow during life, “according to her own direction.”
The second item charged all the balance of bis éstate with the payment of debts, funeral expenses, and specific legacies, • and gave the executrix power to sell any portion of the estate necessary for said purposes. The third and fourth items gave specific legacies ti> certain persons, about which no controversy has arisen. By the fifth item, the testator gives his estate, charged as aforesaid, “to my children, William H. McNairy, Robert O. McNairy, Amanda A. Porter, Catherine Xirkman, and Francis N. McNairy, and my grandchildren, Selina McNairy and Nathanel A. McNairy, son and daughter of John McNairy, deceased, the grandchildren to take the share of their farther. The division to be made in such manner as to make six equal parts, one part to be assigned to each of said children, “and the following advancements, all to be accounted for by them to whom they were made, as follows” — the advancements all then set forth specifically. The other portions of the will relate to the manner in which the estates of the married women were to be beld, and also- fixing certain limitations iqion the estate of some of the devisees, and to *332 other matters upon which no question arises. The present bill was filed, about April, 1854, by R. C. McNairy, John Turkman and wife, and Amanda A. Porter, against C. B. McNairy, the widow and executrix, and "William H. and Francis N. McNairy, and the two' grandchildren named. The prayer of the bill is for an account of the administration and an adjustment of the rights of the parties, and for a partition of the remaining property, or a sale for that purpose, if necessary. The bill was answered by the parties, and the prayer for an account concurred in. At the May term, 1854, there was a decree for an account. Between this and the November term, the account was taken and filed, and was set out at length with the schedules thereto in a decree then rendered, and the report confirmed, there being no exceptions, subject, however^ to the correction of errors at or during the next team. This decree then revives the former decree so far as the same was unexecuted, and the commissioner was directed to report to the next term. Another report was made to the May team, 1855, which, with the schedules attached, was in like manner set out in a decree then rendered and confirmed without exception, subject to a like reservation as to correction of errors. This décree further shows the names of the slaves the widow had elected to take under the will, and also that under the clause charging the entire estate with her support, she had elected to take an annual allowance of $2,500, and release the balance of the estate. This was concurred in by the other parties. To raise an additional fund for this purpose, a sale was ordered of a number of lots in West Nashville. Commissioners were also appointed to partition a tract of land near Nashville. The special commisisoner was also required by this decree to report the exact amount of money and notes in the hands of the executrix, after paying the debts and allowing her the annual sum of $2,500, and also to report the debts unpaid.
At the November term, 1856, a decree was entered con *333 firming the sale of the West Nashville lots, and also the report of the partition of the land near Nashville. This latter was, however, subsequently set aside and a new partition made and confirmed. This decree also' set out another report of Isaac Leittan, commissioner, with schedules, and confirms the same, with leave to the parties to except and point out errors a,t or during the next team, there being no exceptions. At the November term, 1857, a decree was made among other things directing the clerk and master to take and state an account with the executrix, and with the several devisees since the last report, embracing the results of the former reports and such additional items as may be shown -to exist, and report the situation of the estate and the balance for or against each devisee upon equalizing their shares. Other decrees were made, not necessary now to be mentioned, but no further account was taken until after the May term, 1866; at that term a decree was made directing the master to take an account between all the parties, charging each with the amount of property chargeable to him or her, and giving all proper credits. The account to be taken on the basis of the will and former decrees. The master was directed to look to the proof on file and any other proof that might be offered, and also giving him the power to examine either party on oath. This account was finally taken by the clerk and master, and filed on the 7th of May, 1869. On the 18th of October, 1869, W. H. McNairy filed twenty-one exceptions to the report, and the cause was heard before special chancellor, W. B. Reese, on the 7th of October, 1870, upon this report and exceptions and the entire record, and a decree rendered setting aside the report in toto, and referring the cause back to the master to restate the account, and giving certain directions and settling cei*tain principles to govern the master in taking the account.
From this decree, C. B. McNairy, the executrix, R. O. McNairy, Amanda A. Porter and John Kirkman, and two *334 others, have appealed. The facts will be more particularly stated in connection, with the several questions presented. The litigation previous to the late civil war was evidently of a friendly character. The contest has arisen since, perhaps in part attributable to the changed state of affairs. It was important that the settlement of the estate so long delayed should have been brought to a final settlement upon the last report, if it was practicable to do so in accordance -with the substantial rights of the parties. The first question was as to the effect of the former accounts taken and reports made by the master, and decrees confirming the same.
The master, as he was directed, did not go behind these reports, but assumed as the basis of his report the results reached by said former reports. The results reached by these former reports were more important in their consequences, in regard to the account of assets with which the executrix was chargeable, and also in regard to> the state of the account between the executrix and "W. H. McNairy. At the death of N. A. McNairy, he was liable as surety or indorser of W. IT. McNairy, or of firms of which W: H. Nairy was a member, for large sums, and had probably paid large sums previously. To meet these liabilities W. II. McNairy had placed in the hands of the executrix col-laterals to a large amount.
The state of accounts growing out of these matters was an important inquiry, and was reported upon in the former reports, and as stated, these results assumed by the master as the basis of his last report. The chancellor ordered an account de novo and required the executor to render a full inventory of the estate, and that she be examined on oath, if any of the devisees desired it. The former reports were held to be final only as to the items of charge and discharge especally embraced, but either party was allowed to go behind the report and show by proof that there were other items which had not been charged or credited or passed *335 upon. Upon this question we- think the decree is erroneous.
The pleadings and decrees preceding the reports in question fully contemplated a settlement of the accounts of the executrix, embracing all transactions- up to the time of taking the account. The decree directed that the executrix be charged with all the sums that had, or by due diligence should have co-me^ to her hands.
The account professed to show all such charges against her. There was no exception by any party. The settlements thus made were acquiesced in for many years.
The attempt to go behind these settlements is now made only by exception to the last report. To hold that the settlements are conclusive only as to the items specially reported, would be to reverse the rale. The report with a decree confirming it ought a.t least to- be as good as a settlement in the county court, and stand as prima facie correct as to all matters which should have been embraced, subject to be impeached by bill pointing out the errors.
That the accounts were taken without any regular inventory by the executrix, or without her being examined before the commissioner, cannot alter the result, nor can it affect the question, that the record now contains no evidence sustaining these reports. .The parties were all properly before the court and represented by counsel. It was perfectly competent for them to waive the production of the best evidence or of any evidence. The report, made in strict conformity with the pleadings and decree and setting forth the items, must be held conclusive upon the parties, unless they excepted thereto-. Their failure to except must be taken as an admission that the report was correct, according'to well settled principles. If the parties stand by and admit the settlement to be correct, by failing to except, and it is confirmed by decree, they cannot afterwards go behind this without laying special grounds for do-ing so, etc. The result, of the accounts taken in 1855 and 1856, *336 in the matter of W. H. McNairy before referred to, it is said, stood upon a different ground. It is argued that the decrees ordering the accounts in question did not specifically direct an account of these transactions, and that in such cases where the report of the master embraces matters not submitted to him, that the parties are not bound to except to or notice this part of the report, but may disregard it. This principle may be correct when the matter reported upon is not involved in the cause by the pleadings, or where it is clearly outside the reference, so that the parties were not bound to take evidence upon it. 2 Daniel! s Oh. P1..& Pr., 1291; 2 Story Pep., 261. But if the matter be property presented by the pleadings, and the master report upon it, although not specially directed so to do, but under a general order, and the parties permit a decree to be taken without exception, we should think the decree valid. In the present case the matter in question was directly raised by the bill, the answers' of the executrix, and especially in the answer of "William H. McNairy. They all set forth and show that the estate was largely indebted on account of securityship for W. H. McNairy, part of which had been paid, and that W. H. McNairy had placed collaterals in the hands of the executrix to meat these liabilities, and had made a deed for property and other effects to secure the estate; it was conceded also that a, lien in favor of the executrix would exist on W. II. McNairy’s entire share of the estate for further indemnity. The pleadings fully contemplated a final settlement, and division of the estate, which could not be had -without settling this matter between W. II. McNairy and the executrix.
The decree for account was general in its terms, which according to some authority, is the proper practice. At any rate, the account would not have been complete and would not have furnished the basis of a decree finally settling and dividing the 'estate, without embracing this matter also. The report of the commissioner to the May term, 1855, *337 shows that on account of the debts paid or to be paid by the estate for ~W. II. McNairy, and the collaterals furnished by him for that purpose, that there was a balance in favor of W. IT. McNairy of $2,386.49. But in this he says was embraced a large portion of the notes for the sale of ~W. H. MeNairy’s property, not collected; in fact over $6,000 not due, and a portion of the assets received from the business of McNairy & Hamilton was uncollected, among’ others the greater part of a decree against Zimmerman, of $7,475.55, but as the parties denied the account stated, he had reduced the notes to their cash value. The schedule showing the items upon which this part of the .report was based, was filed as part of the report. In the report to the November term, 1856, the commissioner refers to that part of the previous report above set forth, showing a balance in favor of "W. IT. McNairy, and says, since which time W. II. McNairy has withdrawn one of tire collaterals placed in the hands of the executrix, and that there has been other changes, and he filed these with schedules 4 and 5, showing the account, and showing a balance against W. II. McNairy, up to Jan., 1857, of $11,884.43. Both these reports, as shown, were, with the schedules showing the items set out in the decrees, confirmed without exception. This latter report was taken as the basis of the master's report, upon which the final action was- taken. We hold that the report last named confirmed, without exception, is conclusive upon W. IT. McNairy; that the question was directly involved by the pleadings; its settlement was necessary to the setlement- of the cause; that the matter was fairly embraced in the reference to the master. The report showing the items in a manner so pointed and in matter so important, at a time when the facts must have all been fresh in his mind, could hardly have escaped his attention, represented as he was by counsel, and having then acquiesced in it, he cannot now, after the lapse of *338 so many years and when the facts may have become obscured by time, be allowed to go behind this report upon a mere exception to a subsequent report based thereon. It is argued, however, that upon the same principle that the report,confirmed at the November term, 1856, cannot, in this manner, be impeached, that this report and decree could, not change the previous report and decree of the May term, 1855, which showed a balance m favor of W. II. McNairy, and that this former report was the one that is conclusive. But there is no conflict between the reports to the May and November terms. The latter report and decree do not assume that the former were not true and correct, but simply that since then the result had been changed by subsequent transactions. "We must take it that both were true, and there is no conflict between them. We hold that the chancellor’s decree upon this question was erroneous. It is argued, however, that the appeal vacates all the decrees and that this court should now go- back to the decree of May, 1855, showing the balance in favor of W. II. McNairy. If we should admit that the appeal opens the case for review upon all the decrees, which in a case of this character' we do not admit, it would not alter the case, as we have said there is no conflict in the accounts, and if open to review, they are conclusive upon the parties on account of their failure to- except. If,- as appears, W. II. McNairy withdrew collaterals from the hands of the executrix, so as to show a balance against him on this account, he cannot complain of this result.
The next ground of exception to the report we notice, is in regard to the manner of calculating interest upon the account of the executrix. The master begins by taking the balance in her favor, shown by the former reports referred to; in addition, he credits her with the annuity settled in her favor, of $2,500 due at the end of each year; also with disbursements. Against this, he charges her with receipts and with amounts borrowed by her from the funds in the *339 hands of the master. He strikes a balance at the end of each year, and the balance being in favor of the executrix, he allows her interest on the same until the next year, when the same is again repeated, thus compounding the interest every year in her favor, at least, such we understand to be the effect of the report on this subject. We think this exception well taken, and that it was properly sustained by the chancellor. We know of no principle upon which she was entitled to have interest compounded in her favor at the end of each year when there was no settlement, any more than she would have been chargeable with it if the balance bad been against her. She was entitled to interest upon the sums due her from the time they became due, and her annuity fell due at the end of each year; but she was only entitled to" simple interest, and she should have been charged with the sums received at the times received, and the interest computed in her favor upon the principle applicable to the partial payments of notes, but without annual rests. The accounts in this regard should be restated. In this connection, another question of similar character arises. The decree of November, 1856, in confirming tbe sale of the ’West Nashville lots, shows that these lots were sold in part to raise a fund to produce an income for Mrs. McNairy; that is, to pay her annuity, and that John Kirkman and H. O. McNairy, two of the parties, bought lots and gave their notes, with good security, with a view to this permanent investment, being ready to renew their notes, and give other security when required, and pay the interest semi-annually; “and the court being of -opinion that the investment is safe and meets with the approval of Mrs. McNairy, it is ordered by the court that the master make title to Kirkman and McNairy to the lands so purchased by them, and hold the notes until further order, upon payment of the interest semi-annually to Mrs. McNairy, as aforesaid.” The interest, however, was not paid, nor were the notes renewed. It is now insisted that said Kirk- *340 man and McNairy should be required to pay the interest upon these notes, compounded semi-annually, or if this cannot be done, that Mrs. McNairy, to whom this interest should have been paid, shall be held to account for the loss, which will result from her failure to collect the interest semi-annually, which would, we suppose, be the difference between the simple and the compound interest on the notes. First, are Kirkman and McNairy liable upon their notes for interest upon the semi-annual interest; that is, did the interest fall due at the end of each six months, so* as itself to bear interest? It is settled that a contract of this sort may be enforced. House v. Tennessee Female College, 1 Heds., 128, and authorities there cited. But the notes in question contain no such stipulation, nor is there any evidence of such a contract at the time, of their execution and delivery. They were, therefore, not bound by the original contract, to pay such compound interest. Do' the recitals of the decree, above set forth evidence a valid contract upon any new consideration binding the parties to pay the interest as claimed ? A new proanise to pay the debt, with interest semi-annually, this latter being’ founded upon some new consideration, such as an extension of time, would no doubt be valid; but this decree only shows that the clerk and master was ordered to hold these notes until further order, upon payment of interest semi-annually to Mrs. Mc-Nairy — Kirkman and McNairy declaring themselves ready to renew their notes and give other security, if required, and pay the interest semi-annually. No new note, however, was given, nor were Kirkman and McNairy’s obligation to pay the whole notes at the end of the twelve months, according to the notes themselves, in anywise altered. The direction to the clerk to hold the. notes, might, at any time, have been changed by a future order and judgments taken when the notes fell due, for the whole amount, and the parties without judgment would have had the right to have discharged themselves by the payment *341 of the whole amount of the notes at maturity. It was hut a direction- to the clerk and master, to he followed upon a certain condition, but neither was bound by any new contract. The parties are- therefore, entitled to-' stand upon their original contracts, that is, their notes bearing simple interest.
Next, is Mrs. C. B. McNairy liable as if she had collected the interest semi-annually? That is, must she make up what is lost by the interest not being so- paid. If the interest had been so paid, it would have gone to- her, upon the annuity allowed her; but not being so paid, the annuity to this extent, remains due her with simple interest. In this view, she may be said to lose by the result. As we hold that there- was no legal obligation upon Turkman and McNairy which could have been enforced compelling them to pay the interest semi-annually, it must result that Mrs. McNairy is not liable for not compelling them to do what she could not have compelled them to do, although it would have been for her own benefit had they made the payment. The notes were made payable to the clerk and master. The executrix might have moved their collection. If this had been enforced according to the legal obligations, it would have resulted in the payment of the whole notes according to their terms. The arrangement contemplated, by which these debts were intended to be funded upon new and permanent loans, upon contracts to- pay the interest semi-annually, was never consummated, but these- with the other notes were simply permitted to remain without steps taken to collect them. In legal contemplation, the executrix is no more responsible for this delay than the other parties to the cause.
The next question we dispose of is in regard to interest upon advancements. The advancements set forth in the bill to the several children are in unequal amounts.
It is well settled that interest is not chargeable- upon *342 advancements previous to the death of the testator or intestate. ,
It is supposed that up to the death of the intestate the other children not advanced receive other benefits equal to that received by the advanced child* en from the ase of the advancement. McDongal v. King, 1 Bailey (S. C.) Equity Reports, 155. But it is argued that after the death or the time fixed for division, interest should be charged upon the advancement up to' the time the division or distribution actually takes place, in order to preserve equality. There are cases which seem to favor this doctrine. See the case above referred to, and Daves v. Haywood, 1 Jones Equity Rep. (N. C.), 253; 1 Strobhart Ch. [S. C.], p. 124. In some cases this would reach the proper result. The true theory, we apprehend, is that the partition and distribution should be made as at the death of the intestate, or at the time fixed by the will in cases of testacy. The property or funds to be valued as at that time, and the advancements be charged as received at that time. See 1st Bailey, 155; Burton v. Dickinson, 3 Yer., 112. If the actual division is postponed beyond this time and the corpus of the fund or property left for division does not increase by way of interest or profits, then it could hardly be proper-to charge the advanced child interest upon his advancement; for his share of the corpus of the property might be taken to pay interest upon his advancement, and thereby absorb it, without any corresponding benefit by way of interest upon the corpus. If, on the other hand, the division of the corpus of the estate is delayed beyond the time when the rights of the parties accrued, and during the delay, interest or profits accrue upon the entire corpus, then it would not be proper to divide the interest or profits equally among all entitled without regal'd to advancements, or, what would be the same thing, add the interest or profits to the corpus to constitute the gross fund for distribution, ■without also charging interest upon the advancement also *343 during the delay. To illustrate, if A die leaving B 'and C as his distributees, and a fund of $3,000 for distribution, B, however, having been advanced $1,000, the distribution would be simple. IT would be charged with his advancement of $1,000, and receive $1,000 of the corpus, and C the remaining $2,000. If the division be delayed, but without the accumulation of interest, the result would be the same. If, on the other hand, the division be delayed until the corpus of the fund accumulate $1,500 of interest, then to add this to the corpus, and also the advancement without interest, and divide the aggregate equally, would be to give B one-half of the interest accrued upon the corpus, and charge him nothing for interest upon his advancement. This would be erroneous. B’s share of the corpus was only $1,000; he- was entitled to this and the interest that accumulated upon it, which, in the case supposed, would be $500, and C to his share of the corpus, and the interest that his share had drawn, which would be $1,000. Precisely the same result would be reached in the case supposed, by adding the corpus and interest- during the same time into one aggregate, and dividing the same equally. So in a case of this sort-, to charge interest upon the advancement during the delay, would reach a correct result. So, we see that in a case where no interest or profits accrue during the delay, there is no difficulty. So; also; where during the delay the corpus of t-he fund has for the whole time drawn the regular rate of interest, it is equally free from difficulty. But if we suppose cases, where the corpus of the property is partly land, partly money aud partly other property, some of which accumulates interest fox the whole time or delay, pari produces profits for part of the time, but not at the regular rate of interest, and part produces no profits, then the case is not free from difficulty. The theory may be clear enough, but the practical application may be. difficult. In the case last supposed, it would not be right to charge interest lipón the advancement at *344 the regular rate against the increase upon the corpus of the fund, which was not at the same uniform rate. As we have said we think the true rule is that the advancements should be equalized out of the principal of the estate, estimated at the time the distribution should have been made, the accumulations upon the principal or corpus during any delay that occurs, to be apportioned according to the share of each in the corpus — that is, each one will receive the profits that his share of the principal has accumulated, estimating the profits as having been accumulated upon the whole corpus. The principle is as well stated in White v. White, 3 Dana (Ky. Rep.), 374, as any case to which we have been referred.
It is'said that in the present case there will be no profits or interest for division; that it has all been absorbed in paying the annuity due the executrix, and other claims. If the account shows this result, then the settlement will be simplified; if otherwise, the rule above indicated should be followed as near as practicable. Absolute,' equity [equality] in some cases may not be found practicable.
It is next argued that W. IT. McNairy - should not be charged interest upon certain purchases made by him of West Nashville lots. He gave no notes, but bought with the understanding that the amount was to> be taken out of his share of the estate; but we do not see that it would be equity to charge the others interest and charge, him none for similar purchases, when the terms of sale were the same; he is as legally bound by the terms as if he had given a note.
The foregoing settles the principal questions raised by the exceptions to the report. The account will be restated, upon these principles, by the clerk of this court, at as early a day as practicable, and in tailing the account he may hear additional proof upon the matters raised by the third exception, which relate to credits claimed by the, executrix for disbursements, without the vouchers being on file, and *345 also as to tbe twentieth exception in relation to lot 54, in Nashville, which is alleged to have been omitted in the statement. The other exceptions referred to, in SO' far as they are not disposed of in this opinion, are overruled. The costs should be paid out of the aggregate estate.